**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 22-7365**

———————————

EDGARDO VASQUEZ CASTANEDA,

        Petitioner – Appellant,

    v.

SUPERINTENDENT PAUL PERRY, in his official capacity as Superintendent of the Caroline Detention  Facility; LYLE BOELENS, in his official capacity as Acting Field Office Director of the Immigration and Customs Enforcement, Enforcement and Removal Operations Washington Field Office; ATTORNEY GENERAL MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,

        Respondents – Appellees.

-------------------------------

IMMIGRANT LEGAL DEFENSE; LEGAL AID JUSTICE CENTER; LEGAL AID SOCIETY; MAKE THE ROAD NEW YORK; PRISONERS' LEGAL SERVICES OF NEW YORK,

        Amici Curiae.

———————————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Patricia Tolliver Giles, District Judge.  (1:21-cv-01407-PTG-IDD)

———————————

Argued:  December 6, 2023                     Decided:  March 11, 2024

———————————

Before WILKINSON, NIEMEYER, and AGEE, Circuit Judges.

———————————

Affirmed by published opinion. Judge Agee wrote the opinion in which Judge Wilkinson and Judge Niemeyer joined.

––––––––––––––

**ARGUED:** Ian Austin Rose, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C., for Appellant. Matthew James Mezger, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees. **ON BRIEF:** Samantha Hsieh, CAPITAL AREA IMMIGRANTS' RIGHTS (CAIR) COALITION, Washington, D.C., for Appellant. Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellees.

––––––––––––––

AGEE, Circuit Judge:

Edgardo Vasquez Castaneda filed a 28 U.S.C. § 2241 petition for a writ of habeas corpus, arguing that his civil detention during the pendency of ongoing withholding-only proceedings he initiated is unlawful. The district court dismissed the petition, and Vasquez Castaneda appealed. We affirm.

I.

A.

Vasquez Castaneda, a citizen and native of El Salvador, entered the United States illegally in 2006. He was promptly apprehended by the U.S. Border Patrol, served with a notice to appear in immigration court, and released on his own recognizance. Vasquez Castaneda failed to appear for his hearing, and an immigration judge ("IJ") ordered him removed to El Salvador in absentia.

Two years later, U.S. Department of Homeland Security ("DHS") officers apprehended Vasquez Castaneda and removed him to El Salvador.

Sometime later, Vasquez Castaneda reentered the United States, again illegally.

In May 2016, the International Criminal Police Organization ("INTERPOL") published a request to law enforcement worldwide—a "Red Notice"—to locate and provisionally arrest Vasquez Castaneda for extradition to El Salvador. The Red Notice, which was predicated on an arrest warrant issued by the Salvadoran government in 2010, alleged that Vasquez Castaneda was an MS-13 gang member and had been charged with

aggravated murder and criminal conspiracy based on his involvement in a fatal shooting in April 2009.

Three years later, in May 2019, U.S. Immigration and Customs Enforcement ("ICE") officers apprehended Vasquez Castaneda in Maryland and reinstated his 2008 order of removal. *See* 8 U.S.C. § 1231(a)(5). But before ICE could execute the reinstated order, Vasquez Castaneda claimed a fear of torture if removed to El Salvador. As a result, Vasquez Castaneda was referred to an asylum officer for a reasonable fear interview. *See* 8 C.F.R. §§ 208.31(b), 1208.13(b); *see also* 8 C.F.R. §§ 241.8(e), 1241.8(e). The asylum officer found that Vasquez Castaneda's fear was reasonable and referred the matter to an IJ for withholding-only proceedings. *See* 8 C.F.R. §§ 208.31(e), 1208.31(e).[1]

In August 2019, Vasquez Castaneda appeared before an IJ for a bond hearing.[2] The IJ denied bond, finding that Vasquez Castaneda failed to prove that he wasn't a danger to

---

[1] An alien like Vasquez Castaneda who is subject to a reinstated order of removal is "generally foreclos[ed]" from discretionary relief from that order, but he may "pursu[e] withholding-only relief to prevent DHS from executing his removal to the particular country designated in his reinstated removal order." *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2282 (2021). Relevant here, the alien can obtain withholding-only relief if he can show that he "is likely to be tortured" in the designated country. *Id.* But even upon such a showing, the alien is not entitled to remain in the United States as "nothing prevents DHS from removing the alien to a third country other than the country to which removal has been withheld or deferred." *Id.* at 2283 (cleaned up).

[2] Vasquez Castaneda's bond hearing was consistent with then-existing case law that has since been overruled by an intervening Supreme Court decision, meaning that he would no longer be entitled to the bond hearing he was provided. Specifically, when Vasquez Castaneda was initially detained in 2019, his detention was deemed governed by 8 U.S.C. § 1226 pursuant to *Diaz v. Hott*, 297 F. Supp. 3d 618, 623 (E.D. Va. 2018) (ruling that § 1226 applies to the detention of aliens subject to reinstated removal orders during the pendency of withholding-only proceedings), a decision this Court later affirmed in *Guzman* (Continued)

4

the community given the Red Notice and the Salvadoran arrest warrant. Vasquez Castaneda did not appeal that determination to the Board of Immigration Appeals ("BIA").

After two continuances at his own request, Vasquez Castaneda appeared with counsel before an IJ in January 2020 for a merits hearing on his application for withholding-only relief. Three months later, the IJ issued a written decision granting Vasquez Castaneda relief under the Convention Against Torture ("CAT"). The IJ found that he would more likely than not be tortured by MS-13, M-18 (a rival gang), and/or the Salvadoran government if he were returned to El Salvador. DHS appealed, and in January 2021, the BIA remanded the case, finding that the IJ clearly erred in deeming Vasquez Castaneda credible.

In April 2021, the IJ again granted Vasquez Castaneda's application for CAT relief. J.A. DHS again appealed. And in December 2021, the BIA again remanded the case based on factual inconsistencies in the IJ's decision concerning Vasquez Castaneda's continued membership in MS-13.

Nearly a year later, in February 2022, the IJ changed course and denied Vasquez Castaneda's application for CAT protection. According to the IJ, Vasquez Castaneda

---

*Chavez v. Hott*, 940 F.3d 867 (4th Cir. 2019). Section 1226 generally permits an alien to apply for release on bond and to receive a bond hearing before an IJ. *See* 8 U.S.C. § 1226(a)(2); 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)(1). To secure release, the alien must demonstrate that he does not pose a danger to the community and that he is likely to appear for future proceedings. 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8).

In *Johnson v. Guzman Chavez*, however, the Supreme Court reversed this Court's decision in *Guzman Chavez v. Hott*, holding that 8 U.S.C. § 1231, not § 1226, governs the detention of aliens subject to reinstated orders of removal, including those seeking withholding-only relief. 141 S. Ct. at 2284. Under § 1231, "the alien is not entitled to a bond hearing." *Id.* at 2280.

remained affiliated with MS-13 and therefore faced no risk of torture at the gang's hands if returned to El Salvador. The IJ also found that Vasquez Castaneda had not shown that he would more likely than not be tortured by M-18 or the Salvadoran government. This time, Vasquez Castaneda appealed. And in August 2023, the BIA yet again vacated the IJ's decision, concluding that the IJ failed to engage with new evidence submitted by Vasquez Castaneda, and remanded the case for a third time. The IJ has yet to rule on remand.

B.

Since Vasquez Castaneda's detention began in May 2019, ICE has conducted several custody reviews consistent with DHS regulations. But ICE has decided to continue detention because (1) Vasquez Castaneda's removal to El Salvador is reasonably foreseeable given the regularity with which El Salvador issues travel documents for its citizens' removals; (2) he presents a flight risk; and (3) he is a danger to the community because of his criminal history in El Salvador and membership in MS-13. That custody determination did not change even after INTERPOL rescinded the Red Notice concerning Vasquez Castaneda in November 2019.[3] In ICE's judgment, continued detention is warranted given that the underlying Salvadoran arrest warrant is still active.

Having failed to obtain relief through administrative channels, Vasquez Castaneda filed this § 2241 petition in federal district court in December 2021, just before the BIA remanded his CAT claim to the IJ for the second time. Vasquez Castaneda's petition

---

[3] INTERPOL's decision to rescind the Red Notice hinged on its finding that "the data . . . provided by El Salvador [concerning Vasquez Castaneda] raised questions as to compliance with applicable [INTERPOL] rules." J.A. 49.

challenged his civil detention on two grounds. First, he argued that his then-two-and-a-half-year detention violated § 1231, as interpreted by the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), which held that § 1231 authorizes detention only "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future," *id.* at 701. And second, he asserted that his prolonged detention without another bond hearing violated the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

The Government[4] moved for summary judgment, which Vasquez Castaneda opposed and followed with his own motion for the same.

After hearing arguments on the parties' cross-motions, the district court issued a written decision in September 2022 denying Vasquez Castaneda's motion, granting the Government's motion, and dismissing the petition. *Castaneda v. Perry*, No. 1:21-cv-1407 (PTG/IDD), 2022 WL 4624832 (E.D. Va. Sept. 30, 2022).

Beginning with the statutory claim, the district court concluded that Vasquez Castaneda's detention did not violate § 1231, as interpreted by *Zadvydas*, because Vasquez Castaneda could not show that his removal was not likely to occur within the reasonably foreseeable future. *Id.* at *3. In reaching that conclusion, the district court emphasized both the finite nature of Vasquez Castaneda's withholding-only proceedings and the fact that ICE routinely deports aliens to El Salvador. *Id.* But even assuming that Vasquez Castaneda

---

[4] Vasquez Castaneda's § 2241 petition named various government officials as respondents. For ease of reference, we refer to these respondents collectively as "the Government."

had shown that his removal was not likely to occur within the reasonably foreseeable future, the district court found that the Government had provided sufficient evidence to justify his continued detention, namely, that he was a flight risk and posed a danger to the community. *Id.* at *4.

Turning to the due process claim, the district court applied the three-factor balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and found that the factors weighed in the Government's favor. Castaneda. *Id.* at *4–6. The court recognized that Vasquez Castaneda "has a significant private interest in his freedom." *Id.* at *5. But it found that ICE's regulations, which require periodic custody reviews, "lessen the risk of erroneous deprivation." *Id.* The court further found that the Government has a "well-established interest in immigration regulation, prompt execution of removal orders, prevention of flight risk, and public safety." *Id.* at *6 (cleaned up). When combined, the district court held, these latter two factors outweighed the first, thereby defeating Vasquez Castaneda's due process claim. *Id.*

Vasquez Castaneda appealed, and we have jurisdiction under 28 U.S.C. § 1291.


II.

We review de novo the district court's denial of § 2241 habeas corpus relief. *Seay v. Cannon*, 927 F.3d 776, 780 (4th Cir. 2019). To be entitled to this relief, a federal prisoner must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

III.

On appeal, Vasquez Castaneda argues that the district court erred in granting summary judgment to the Government and dismissing his § 2241 petition. He contends that his continued civil detention during the pendency of his withholding-only proceedings violates § 1231, as interpreted by the Supreme Court in *Zadvydas*. Alternatively, he asserts that due process requires that he at least receive another bond hearing before an IJ. We discuss each claim in turn.

A.

Section 1231 governs the detention and removal of aliens subject to administrative final orders of removal, including reinstated orders of removal. 8 U.S.C. § 1231(a). That section provides that DHS "shall detain the alien" and physically remove him from the United States within a 90-day "removal period." 8 U.S.C. § 1231(a)(1)(A), (2).

Despite this 90-day deadline for removal, the statute authorizes DHS to detain an alien beyond the removal period in certain circumstances, including where the alien is inadmissible or DHS determines that the alien is "a risk to the community or unlikely to comply with the order of removal." *Id.* § 1231(a)(6); *see also Guzman Chavez*, 141 S. Ct. at 2281 (discussing the other circumstances in which an alien's § 1231 detention may be extended beyond the initial 90-day removal period).[5] But in authorizing such "post-removal-period detention," *Zadvydas*, 533 U.S. at 688, the statute "does not specify a time

---

[5] An alien not subject to continued detention under one of these limited circumstances will be released on supervision. 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5.

limit on how long DHS may detain an alien in the post-removal period," *Guzman Chavez*, 141 S. Ct. at 2281.

Due to the "serious constitutional concerns" that would arise if § 1231 were interpreted to authorize "indefinite detention," the Supreme Court in *Zadvydas* "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." 533 U.S. at 682. Specifically, the Court held that § 1231 authorizes post-removal-period detention only for "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. And in the Court's view, such a "reasonably necessary" period is presumptively six months. *Id.* at 701. After that six-month period, if "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing" or release the alien. *Id.*[6]

1.

Here, there's no question that Vasquez Castaneda's post-removal-period detention, which began in approximately August 2019 (ninety days following the reinstatement of his prior removal order), has exceeded the presumptively reasonable six-month period. So the question before us is whether Vasquez Castaneda has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If

---

[6] In response to *Zadvydas*, DHS promulgated 8 C.F.R. § 241.13, which "establishes special review procedures for those aliens" who have "provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a).

he has, then the burden shifts to the Government to rebut that showing. If he hasn't, then his claim fails and we proceed no further.

Vasquez Castaneda argues that he has made the requisite showing and that the district court erred in concluding otherwise. In particular, he emphasizes the protracted nature of his withholding-only proceedings, which have spanned four years and have gone before an IJ to the BIA and back again three times. And as Vasquez Castaneda now awaits a fourth decision by the IJ, he maintains that there is a "significant possibility" that these proceedings could continue "several more years" because the losing party will almost certainly appeal the forthcoming decision to the BIA—a prediction informed by the parties' collective three prior appeals—and because of the availability of later judicial review by this Court. Opening Br. 51. Combining that uncertain future with the amount of time he has already been detained, Vasquez Castaneda asserts that his removal from the United States is not significantly likely to occur in the reasonably foreseeable future, thus entitling him to immediate release under *Zadvydas*. We disagree.

Vasquez Castaneda reads *Zadvydas* too broadly, overlooking key factual context that readily distinguishes his case. The petitioners in *Zadvydas* were ordered removed from the United States and detained pending execution of their removal under § 1231. 533 U.S. at 684–86. But the government was unable to remove the petitioners within the normal 90-day removal period because it could not identify any countries willing to accept them, *id.* at 684–86, leaving the petitioners in what the Supreme Court later characterized as a "removable-but-unremovable limbo," *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 347 (2005). With nowhere to send them, the government simply continued to hold the

petitioners in detention, with no plans to release them. *Zadvydas*, 533 U.S. at 684–86. In that respect, the petitioners' detention was "not limited, but potentially permanent." *Id.* at 691. And it was that specific circumstance—the possibility of "indefinite and *potentially permanent*" civil confinement, *id.* at 696 (emphasis added)—that led the Court to read an implicit reasonable-time limitation into § 1231.

In later cases, the Supreme Court confirmed this narrow understanding of *Zadvydas*, stressing that the constitutional concern of endless civil detention was the driving force behind its holding. For example, in distinguishing *Zadvydas* in the context of a due process challenge to detention under § 1226, the Court in *Demore v. Kim*, 538 U.S. 510 (2003), emphasized that "the period of detention in *Zadvydas* was 'indefinite' and 'potentially permanent,'" whereas detention under § 1226 has "a definite termination point." *Id.* at 528– 529 (citation omitted); *see also id.* at 527 (underscoring that "in *Zadvydas*, the aliens challenging their detention following final orders of deportation were ones for whom removal was *no longer practically attainable*" (emphasis added) (cleaned up)). Similarly, in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Court rejected an attempt to analogize detention under §§ 1225 and 1226 to the type of detention at issue in *Zadvydas*, explaining that those statutory provisions, unlike § 1231, "provide for detention for *a specified period of time*." *Id.* at 299 (emphasis added); *accord id.* at 304 (reiterating *Demore*'s observation that detention under § 1226 has "a definite termination point" (citation omitted)). As this Court explained in a recent decision, the clear takeaway from *Demore* and *Jennings* is that "*Zadvydas* should not be expanded beyond the context of the *indefinite and potentially*

*permanent* detention involved there." *Miranda v. Garland*, 34 F.4th 338, 361 (4th Cir. 2022) (emphasis added).

In this case, Vasquez Castaneda's detention simply is not the type of "indefinite and potentially permanent" detention at issue in *Zadvydas*. Vasquez Castaneda is being detained pending the completion of withholding-only proceedings that he voluntarily initiated. Critically, withholding-only proceedings are *finite*. In the ordinary course, they continue only for such time as a determination can be made concerning the legality of removing the alien to the designated country. If the alien fails to obtain withholding-only relief, and absent any other diplomatic or logistical barriers, then the government can— and must—promptly carry out the alien's removal to the designated country. If the alien prevails, then the government may still remove the alien to another country, assuming it continues to pursue removal at all. In either case, however, the withholding-only proceedings *end*. And if the withholding-only proceedings have a definite ending point, then so too must the detention *pending* the resolution of those proceedings. *Cf. Jennings*, 583 U.S. at 304 (explaining that detention under § 1226 did not warrant *Zadvydas* relief because such detention "has a definite termination point: *the conclusion of removal proceedings*" (emphasis added) (cleaned up)). As such, ongoing withholding-only proceedings, even lengthy ones, simply do not present the same risk of "indefinite and potentially permanent" detention at issue in *Zadvydas*. Stated differently, ongoing withholding-only proceedings do not, standing alone, cast doubt on the foreseeability of an alien's removal in the future.

This case is no different. Vasquez Castaneda is subject to a reinstated order of removal to El Salvador. There is no dispute concerning his removability. Nor is there any dispute concerning the Government's representation that ICE routinely removes aliens to El Salvador. *See* J.A. 71 ("ICE conducts an average of two removal flights to El Salvador per week, with ability to remove up to 135 individuals on each flight. . . . Further, El Salvador will accept its citizens without a passport or government issued travel document[.]"). As ICE was coordinating his removal to El Salvador, Vasquez Castaneda voluntarily initiated withholdings-only proceedings, bringing his removal to an immediate halt. But as we've just explained, ongoing withholding-only proceedings alone are insufficient to demonstrate that removal is no longer reasonably foreseeable. If Vasquez Castaneda does not prevail in his withholding-only proceedings, then nothing stands in the way of his prompt removal to El Salvador. And if he does succeed, nothing would prevent ICE from removing him to another country. *See Guzman Chavez*, 141 S. Ct. at 2283. As things currently stand, therefore, Vasquez Castaneda does not find himself in a "removable-but-unremovable limbo." *Jama*, 543 U.S. at 347.

In contending otherwise, Vasquez Castaneda avers that his detention has been extremely prolonged and further highlights that there's no identifiable date by which his withholding-only proceedings will conclude. At the outset, Vasquez Castaneda hasn't cited a single case that has granted *Zadvydas* relief to a § 1231 detainee on the basis that withholding-only proceedings have gone on too long. In any event, while Vasquez Castaneda's withholding-only proceedings have perhaps gone on longer than some, those proceedings are nonetheless progressing in their ordinary course and will eventually come

to a close.[7] The absence of a date certain—imminent or not—for the conclusion of those proceedings is of no moment. What matters, the Supreme Court teaches, is that Vasquez Castaneda's detention "has 'a definite termination point': the conclusion of [the withholding-only] proceedings." *Jennings*, 583 U.S. at 304 (quoting *Demore*, 538 U.S. at 529); *see also id.* at 303 (rejecting *Zadvydas*-based challenge to detention under §§ 1225 and 1226 even though those statutory provisions "do[] not on [their] face[s] limit the length of the detention [they] authorize[]"). As a result, Vasquez Castaneda's detention pending his ongoing proceedings continues to serve § 1231's "basic purpose, namely, assuring [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 699.

 Accordingly, Vasquez Castaneda has not shown that his removal is not significantly likely to occur in the reasonably foreseeable future.

## 2.

Our holding is consistent with that of our sister circuits in identical or analogous circumstances.

Four years ago, the Sixth Circuit in *Martinez v. Larose*, 968 F.3d 555 (6th Cir. 2020), addressed a *Zadvydas* claim against a factual record strikingly similar to the one here. There, another citizen of El Salvador illegally entered the United States after having already been deported pursuant to an order of removal. *Id.* at 557–58. The government apprehended him and reinstated his prior removal order. *Id.* at 558. Thereafter, the alien

---

[7] As the district court observed, Vasquez Castaneda has not shown that the delay in his withholding-only proceedings is directly attributable to anything other than "ordinary litigation processes." *Castaneda*, 2022 WL 4624832, at *3 n.5.

initiated withholding-only proceedings, claiming a fear of torture if returned to El Salvador. *Id.* After those proceedings had been ongoing for a year and a half, the alien filed a § 2241 habeas petition seeking immediate release under *Zadvydas*. *Id.* After the district court denied relief, the alien appealed, arguing that his removal was not reasonably foreseeable because he had been detained "for roughly two years" and because his withholding-only proceedings were not likely to conclude anytime soon. *Id.* at 565. The Sixth Circuit disagreed, holding that the alien's ongoing withholding-only proceedings, even when paired with his two-year detention, did not render his removal no longer reasonably foreseeable. *Id.* The court explained that if the alien failed to obtain withholding-only relief, then "nothing should impede the government from removing him to El Salvador." *Id.* And if he did succeed yet remain detained, "he may refile his § 2241 petition and argue *at that point* that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* (emphasis added). In short, therefore, the alien's ongoing withholding-only proceedings did not leave him "stuck in [the] 'removable-but-unremovable limbo'" that triggered the due process concern in *Zadvydas*; his "removal [was] reasonably foreseeable." *Id.*

Although outside the specific context of withholding-only proceedings, other circuit courts have applied the same line of reasoning when denying *Zadvydas* relief in analogous circumstances. In *Soberanes v. Comfort*, 388 F.3d 1305 (10th Cir. 2004), for example, the Tenth Circuit rejected an alien's argument that his two-year detention was not valid under *Zadvydas* because it was "based on a deportation order that, he insist[ed], [was] invalid and [would] ultimately be overturned." *Id.* at 1311. The court reasoned that, "for now," the

16

alien's detention was "clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*" but rather was "directly associated with a judicial review process that has *a definite and evidently impending termination point*, and, thus, is more akin to detention during the administrative review process, which was upheld in *Demore*." *Id.* (emphasis added).[8] Similarly, in *Andrade v. Gonzales*, 459 F.3d 538 (5th Cir. 2006), the Fifth Circuit dismissed a § 1231 detainee's *Zadvydas*-based challenge to his three-year-long detention because he "offered nothing beyond his conclusory statements suggesting that he will not be immediately removed to Cape Verde following the resolution of his appeals." *Id.* at 543–44.

These decisions support our own that Vasquez Castaneda has failed to show that his removal is not reasonably foreseeable. To reach a contrary result would be to go against this clear weight of authority and create a circuit split, and Vasquez Castaneda hasn't come close to showing how the substantial costs associated with creating such a split in this sensitive area of the law are justified here. *See Escobar Gomez v. Garland*, No. 20-1654, 2021 WL 5860746, at *12 (4th Cir. Dec. 10, 2021) (Wilkinson, J., dissenting) (pointing out "the need for uniformity in immigration law" given "the risk that the courts of appeals will otherwise come to inconsistent and hence unfair results" (cleaned up)).

---

[8] Because there were "pertinent contingencies, involving [another] circuit's timely consideration and disposition of a petition for review, that [were] beyond [its] control," the court emphasized that its decision was without prejudice to the alien's ability to refile for habeas relief should he later demonstrate a material change in circumstances. *Soberanes*, 388 F.3d at 1311.

\* \* \* \*

Because Vasquez Castaneda has not shown that his removal from the United States is not significantly likely to occur in the reasonably foreseeable future, we affirm the district court's denial of immediate release under *Zadvydas*.[9]

### B.

Vasquez Castaneda next argues that even if his *Zadvydas* claim fails, due process requires, at a minimum, that he be granted another bond hearing before an IJ given the particular circumstances of his case. Again, we disagree.

As an initial matter, *Zadvydas* largely, if not entirely, forecloses due process challenges to § 1231 detention apart from the framework it established. As noted above, the Court in *Zadvydas* determined that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem"—specifically, a due process problem. 533 U.S. at 690. To avoid that problem in the context of § 1231 detentions, "the Court applied the canon of constitutional avoidance" and held that § 1231 "'does not permit indefinite detention' but instead 'limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022) (quoting *Zadvydas*, 533 U.S. at 689). By reading § 1231 in such a way and instituting the *Zadvydas* test, "the Court offered us a standard through which to judge indefinite-detention cases." *Martinez*, 968 F.3d at 566.

---

[9] Given our conclusion that Vasquez Castaneda has not made the requisite showing for relief under *Zadvydas*, we do not address the district court's alternative finding that the Government provided sufficient evidence to rebut that showing.

That standard provides the sole recourse available to a § 1231 detainee challenging his detention on due process grounds. In other words, the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation. *See id.*; *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("Because the *Zadvydas* Court set forth this 'reasonable foreseeability' test in order to prevent [§ 1231] from violating the Due Process Clause, we may safely assume that this test articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

We have already determined that Vasquez Castaneda is not entitled to relief under *Zadvydas* because he has failed to show that his removal is not likely to occur in the reasonably foreseeable future. For that reason, Vasquez Castaneda's detention pending his withholding-only proceedings does not, standing alone, offend the Due Process Clause. And if his detention does not offend the Due Process Clause, then the unavailability of another bond hearing before an IJ, the very purpose of which is to seek release from detention, does not either.[10]

---

[10] As mentioned earlier, § 1231, unlike § 1226, does not entitle an alien to a bond hearing before an IJ. *See Guzman Chavez*, 141 S. Ct. at 1280. In fact, "[d]uring the removal period, detention is mandatory." *Id.* (citing § 1231(a)(2)). Consequently, Vasquez Castaneda was not entitled to the first bond hearing he received at the outset of his detention—a bond hearing he received only because his detention was at that time erroneously deemed to be governed by § 1226. And as the Supreme Court's recent decision in *Arteaga-Martinez* makes clear, he has not been statutorily entitled to a bond hearing since that time and is not statutorily entitled to one going forward. 596 U.S. at 580–81 (rejecting the Third Circuit's interpretation of § 1231 that required a bond hearing before an IJ "after six months of detention in which the Government b[ore] the burden" of justifying continued detention because "no plausible construction of the text" imposes such a requirement).

That said, the Supreme Court in *Arteaga-Martinez* acknowledged the government's admission "that as-applied constitutional challenges remain available to address 'exceptional' cases." 596 U.S. at 583. To be clear, the Court only *acknowledged* the government's position; it did not endorse it. So the viability of this alternative pathway is far from settled. Nonetheless, the Government takes the same view here, and Vasquez Castaneda seizes on it. We will therefore assume—but expressly do not decide—that as-applied due process challenges to § 1231 detentions may proceed outside the *Zadvydas* framework when the alien presents, as a threshold matter, exceptional circumstances warranting that departure. Carrying on under that assumption, we have no difficulty concluding that Vasquez Castaneda hasn't presented such exceptional circumstances here.

At bottom, Vasquez Castaneda's argument that his case is "exceptional" hinges on the length of his detention. But focusing on the length of his detention to the exclusion of all else paints an incomplete picture. The *only* reason Vasquez Castaneda finds himself in continued detention is because he voluntarily initiated withholding-only proceedings, blocking his prompt removal from the United States. Those proceedings are still pending. And even accepting they've gone on longer than some, the proceedings have progressed— and continue to progress—in their normal course. Critically, there has been *no* showing that the Government, through bad-faith or careless dilatory conduct, has delayed the resolution of those proceedings. To the contrary, the district court found, and the record confirms, that any delay is attributable to "ordinary litigation processes," *Castaneda*, 2022 WL 4624832, at *3 n.5, as *both* parties have successfully invoked the appeals process and obtained a remand following an adverse ruling by the IJ. Moreover, because he has failed

to show that his removal is not reasonably foreseeable, Vasquez Castaneda's continued detention while those proceedings play out aligns with §1231's "basic purpose" of "assuring [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. Viewed in this light, the length of Vasquez Castaneda's detention, standing alone, simply does not render his case "exceptional."

What's more, the record demonstrates that Vasquez Castaneda has received ample process since his detention began in 2019, further undermining any claim of exceptionality.

To begin, Vasquez Castaneda received a bond hearing before an IJ shortly after his detention began. Ironically complaining of receiving more process than he was due, Vasquez Castaneda chides that bond hearing as "legally invalid." Reply Br. 11. While it's true that the Supreme Court later determined that § 1231, which does not provide for a bond hearing, governs the detention of aliens subject to reinstated removal orders during the pendency of withholding-only proceedings, there's no dispute that, at the time it was conducted, Vasquez Castaneda's bond hearing was valid under then-controlling case law. As such, Vasquez Castaneda received a meaningful opportunity to argue for release on bond. But he failed to demonstrate to the IJ that he did not pose a danger to the community given the then-issued Red Notice and the Salvadoran arrest warrant for murder.

Additionally, Vasquez Castaneda has since received numerous custody reviews by ICE, with DHS regulations permitting him to request a new one up to every 90 days "based

on a proper showing of a material change in circumstances." 8 C.F.R. § 241.4(k)(2)(iii).[11]
As part of these custody reviews, Vasquez Castaneda has the right to present evidence and
to "be assisted by a person of his . . . choice." *Id.* § 241.4(h)(2). Following each of these
reviews, however, ICE has consistently determined that Vasquez Castaneda poses a flight
risk and a danger to the community, and that Vasquez Castaneda has not demonstrated any
material change in circumstances. Nothing in the current record leads us to question those
determinations. Indeed, Vasquez entered the country illegally not once, but twice. And for
fourteen years, he has been wanted in El Salvador for aggravated murder. None of those
facts have changed since his detention began.[12]

　　　　Further still, these very habeas proceedings are affording Vasquez Castaneda due
process. As the Supreme Court has recognized, "habeas corpus in the federal courts
provides a mode for the redress of denials of due process of law. Vindication of due process
is precisely its historic office." *Fay v. Noia*, 372 U.S. 391, 402 (1963), *overruled on other*

---

[11] DHS regulations also require ICE to conduct an annual custody review whether
requested by the alien or not. *See* 8 C.F.R. § 241.4(k)(2)(iii).

[12] Vasquez Castaneda stresses the fact that INTERPOL rescinded the Red Notice in
November 2019, which he says constitutes a material change in circumstances. But the
Government has represented without contradiction that the Salvadoran arrest warrant on
which the Red Notice was predicated is still active. That being the case, we will not second-
guess ICE's determination that the recission of the Red Notice did not effect a material
change in circumstances.
　　　　Vasquez Castaneda also identifies a few instances in which ICE failed to timely
conduct a 90-day custody review following his request for one. *See* J.A. 76 (ICE declarant
explaining that "an inadvertent administrative oversight" was the cause of some of these
untimely reviews). But Vasquez Castaneda has not shown any resulting prejudice, and he
has since received additional custody reviews. Thus, those few untimely reviews do not
transform Vasquez Castaneda's case into an "exceptional" one.

*grounds by Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also Hassoun v. Searls*, 968 F.3d 190, 201 (2d Cir. 2020) ("[T]he availability of habeas corpus is 'sufficient to satisfy the requirements of the Due Process Clause.'" (quoting *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1255 (10th Cir. 2008))).

In sum, Vasquez Castaneda has not shown exceptional circumstances warranting a departure from the *Zadvydas* framework. His as-applied due process challenge to his § 1231 detention therefore fails.[13]

## IV.

Our immigration laws unquestionably give Vasquez Castaneda the right to seek withholding-only relief. But once he decides to avail himself of that right and invoke the process, his detention is not rendered indefinite or his case "exceptional" when that process, progressing in its ordinary course and with no hint of bad faith or unnecessary delay by the Government, takes longer than he would like.

The district court's order granting summary judgment to the Government and dismissing Vasquez Castaneda's § 2241 petition is

*AFFIRMED.*

---

[13] For that reason, we need not undertake a weighing of the *Mathews* factors.